Ruby, Exr., et al., Appellants, *v.* Penn Fibre
Board Corporation.

Argued May 24, 1937.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John A. Hoober,* with him *H. O. Ruby, Wm. A. Luria* and *Charles H. Still,* for appellants.

*V. K. Keesey,* of *Schmidt, Keesey, Stair & Kurtz,* for appellee.

OPINION BY MR. JUSTICE STERN, June 25, 1937:

Defendant company was incorporated in Pennsylvania in 1920 for the manufacture and sale of paper, paper board and kindred products. Its plant is in Springettsbury Township, York County, which was the location set forth in the charter of incorporation as the place where its business was to be transacted. In 1927 the company established an office in the City of New York, and since then has there conducted most of its purchases and sales, administered its business affairs, and kept the books of account covering its financial and commercial operations.[1]

Plaintiffs, stockholders of the company, desiring to investigate some of its transactions and policies, petitioned the court below for a writ of mandamus for the production of the books and records of the corporation. Defendant filed an answer in which it admitted plaintiffs' right to an inspection, and averred its willingness to permit an examination of the books at the New York office, but alleged that their removal to York would seriously interfere with the conduct of its business, and asserted that its principal place of business was in New York and that the maintenance of the books there was authorized by law. The court below ordered that a writ

---

[1] A majority of the stock is held by citizens of the State of New York, and a majority also of the board of directors are citizens of New York.

of peremptory mandamus issue to the company and its officers, commanding them to give to plaintiffs, their agents or counsel, "full and free access at all reasonable times to the books, records and correspondence of the respondent corporation at its office in the City of New York." Plaintiffs appeal from that order, and the only question in the case is whether they are entitled to have the books produced in York.

The Corporation Act of 1874, P. L. 73, section 3, provided that the charter of an intended corporation should set forth, inter alia, "the place or places where its business is to be transacted." It was held in *Hempstead v. Meadville Theological School*, 284 Pa. 147, 156, that " 'By the place where the business is transacted, . . . [is meant] where the corporate functions are to be performed—where the stockholders hold their elections, and the directors manage and direct the business of the corporation. It is not necessarily where the employees do their work, but the place from which the work is directed.' " In other words, the "business" referred to was that connected with the activities of the corporation as such, as distinguished from its commercial operations, and by the place where such business was transacted was meant the legal residence or domicile of the corporation.[2] The Business Corporation Law of 1933, P. L. 364, changed the phraseology of the Corporation Act of 1874. It provides, section 204(2), that the articles of incorporation shall set forth "the location . . . of its initial registered office in this Commonwealth." It further provides, section 302(10), that corporations may carry on their operations and have offices outside of the Commonwealth. Section 306 provides that every business corporation shall maintain in the Commonwealth a registered office which may, but need not, be the same as its place of business; it is the location of this registered

---

[2] The opening of the New York office of defendant was therefore not a removal of location within the terms of the Act of March 18, 1879, P. L. 7, or the Act of June 8, 1893, P. L. 355.

office that is to be stated in the articles of incorporation. Section 308, which governs the present controversy, provides that every business corporation shall keep at its registered office the by-laws, minutes and share register, and that "Every such corporation shall also keep appropriate, complete and accurate books or records of account, *which may be kept at its registered office, or at its principal place of business."* Paragraph B of the same section gives to shareholders the right to examine the books and records "at any reasonable time or times, for any reasonable purpose."

It is obvious that the new act uses the term "registered office" as identical with the term "place where its business is to be transacted" as employed in the Act of 1874, while the term "principal place of business" in the new act refers to the place where the commercial activities of the corporation are conducted, as distinguished from the "registered office" where the meetings of the shareholders are held and the corporate books and records, but not necessarily its books of account, are to be kept.

In the present case the court below found as a fact that "the principal place of business" of defendant is its office in New York City, and it follows that defendant is authorized by the Business Corporation Law to keep its commercial records and books of account there. It may be added that the new act applies not only to corporations formed under it, but also, by Article I, section 3, to all corporations of the second class organized under the Act of 1874.

It thus being established that it is not illegal nor improper for defendant to keep its books of account in New York, the question remains whether plaintiffs may nevertheless insist that the books be brought to York for examination. That a stockholder has a right to inspect the books, for a proper purpose, is undoubted. But he has no right to insist upon any particular time or place for conducting such inspection. The law contents itself

with the statement that the examination should be made at a "reasonable" or "proper" time and place: *Kuhbach v. Irving Cut Glass Co.,* 220 Pa. 427, 432, 433; *Hauser v. York Water Co.,* 278 Pa. 387, 391; *Conerty v. Butler County Oil Refining Co.,* 301 Pa. 417, 421. What is reasonable and proper necessarily depends upon the circumstances of each case and must be determined by the exercise of the discretion of the court enforcing the right. The problem is essentially one of the relative convenience of all parties concerned. The petitioning stockholder should not be put to unnecessary trouble or expense which might substantially impair the right itself, but the remaining stockholders also have rights which must be respected, and the examination should not be allowed at a time or place or under conditions which would unduly interfere with the regular course of business of the company. For example, if the books are numerous and bulky, and the place of business where they are regularly kept is not remote, even though in another state, there is no reason why the stockholder should not be compelled to go there if he wishes to examine them, but if they can be readily transported, and the temporary deprivation of them would not seriously handicap the operations of the company, the court, acting within its discretion, might properly require their production at the registered office of the company within the Commonwealth. In the present case there was testimony that the removal of the records from the New York office would "paralyze" defendant as far as its bookkeeping was concerned; on the other hand, it was not shown that any hardship to plaintiffs would result if they were required to make the inspection of the books in New York. The court below, therefore, exercised its discretion not only without abuse, but wisely.

The decree is affirmed.