Perlberg, Appellant, *v.* Union Bank & Trust Company of Philadelphia et al.

Argued January 24, 1939. Before MAXEY, DREW, LINN, STERN and BARNES, JJ.

*B. D. Oliensis,* for appellant.

*James McMullan* and *Drinker, Biddle & Reath,* for appellees, were not heard.

OPINION BY MR. JUSTICE BARNES, May 25, 1939:

The plaintiff is a shareholder of Union Bank and Trust Company of Philadelphia. In March, 1928, an examination into the affairs of this bank disclosed that its assets were insufficient to satisfy the claims of its depositors and other creditors, and by arrangement between the directors thereof and the Philadelphia Clearing House Association, the assets of Union Bank were purchased by the Corn Exchange National Bank and Trust Company, pursuant to written agreements entered into between the two banks on March 28, 1929, and on April 11, 1929.

The agreements provided that Corn Exchange Bank would pay all depositors and creditors of Union Bank, and would distribute to its shareholders, in proportion to their holdings, an amount equal to the net sum realized from the assets, after the creditors and expenses of

liquidation had been paid, and it was stipulated that the Corn Exchange Bank should be free from liability in connection with the liquidation except for wilful misconduct or gross neglect. The directors of Union Bank gave their individual guarantees to the aggregate amount of $1,500,000 to indemnify Corn Exchange Bank against any loss it might sustain because of its assumption of the liabilities of Union Bank. In addition thereto certain Clearing House Banks agreed to reimburse the Corn Exchange Bank for any loss in excess of the sum realized upon the directors' guarantees.

After the assets had been converted and all creditors, including depositors, paid, a deficiency resulted. Directors of Union Bank, to the extent that they were able, paid upon their guarantees and similar payments were made by the banks, which had so agreed. There was no surplus available for distribution to the shareholders of Union Bank, and the plaintiff received no payment on account of his shares.

In July, 1933, plaintiff filed a bill in equity against the Corn Exchange Bank, to which preliminary objections were sustained. Finally on October 3, 1935, he petitioned for a writ of alternative mandamus to compel defendants to produce for examination all the books and records of Corn Exchange Bank concerning Union Bank, to determine if there had been any mismanagement in liquidating the assets of that bank.

In their answer defendants challenged the right of plaintiff to examine the books of Corn Exchange Bank, since he was a shareholder only of Union Bank. They averred, however, that they had given plaintiff full information of all matters in connection with the liquidation, and had furnished him with audits prepared by a certified public accountant showing liabilities in excess of assets, advising him of all the claims that had been charged off, with the reasons therefor, and they offered to permit an examination of the records in question by certified public accountants selected by the plain-

tiff but satisfactory to the defendants. The offer stipulated that if an accountant acceptable to the parties could not be agreed upon, one should be chosen by the court; that the examination be conducted during business hours at plaintiff's expense; and that plaintiff and his attorneys be enjoined from revealing any information so obtained to any person, or from using it for any purpose other than as a basis for further proceedings.

Subject to these conditions, on February 21, 1936, the court granted the petition for the writ of alternative mandamus. The order provided that if an accountant was not agreed upon by the parties within thirty days the selection would be made by the court. Subsequently the parties advised the court that they were unable to agree. The names of three accountants were then suggested by the court, but plaintiff declined to retain any one of them.

Thereafter on May 5, 1937, approximately sixteen months after the writ of alternative mandamus was granted, the plaintiff petitioned the court to modify the order of February 21, 1936, to the extent that he be permitted to select an accountant satisfactory to himself alone. He averred that the inability of the parties to agree upon the person to examine the books and records was caused by the failure of the defendants to coöperate, and that, as the court retained jurisdiction over all further proceedings, the defendants could not be harmed.

Defendants in their answer denied any lack of coöperation, and asked leave of court to withdraw their offer to allow an examination of their records relating to Union Bank, on the ground that plaintiff had failed to comply with the order of February 21, 1936. They further prayed that the order be vacated and the petition for alternative mandamus be dismissed. The petition of plaintiff for the modification of the order was refused, and on March 19, 1938, the court dismissed the petition

for the writ of mandamus. The appeal of plaintiff therefrom to the Superior Court has been certified to this Court.

A shareholder's right to examine in person or by agent or attorney, at reasonable times for reasonable purposes, corporate books and records, and to enforce that right by mandamus, is unquestioned: *Com. ex rel. Wilde v. Penna. Silk Co.*, 267 Pa. 331; *Conerty v. Butler Co. Oil Ref. Co.*, 301 Pa. 417; *Ruby v. Penn Fibre Board Corp.*, 326 Pa. 582. But the rule is without application to the present case.

The plaintiff was a shareholder of Union Bank and not of Corn Exchange Bank. In consequence, he had no right to examine the books of Corn Exchange Bank unless that privilege was given by the agreements of March 28, 1929, and April 11, 1929, or by the voluntary offer made by the defendants in their answer upon which the order of February 21, 1936, was based.

A study of the agreements in question is convincing that nothing contained therein entitles the plaintiff to make the examination which he demands. The agreements do not confer the status of shareholders of Corn Exchange Bank upon shareholders of Union Bank, but provide that under certain circumstances such shareholders may become creditors of Corn Exchange Bank. The agreement, however, stipulates that Corn Exchange Bank shall not be liable for anything in connection with the administration or liquidation of the assets of Union Bank "except only for its wilful misconduct or gross neglect." Since plaintiff has averred no acts which would constitute misconduct or neglect on the part of Corn Exchange Bank in connection with the liquidation, there is no basis established for an examination of its books relating to the subject.

Nor is there merit in the contention that the order of February 21, 1936, was unreasonable, or that defendants could not withdraw the offer upon which it was predicated. As we have seen, the consent order of Feb-

ruary 21, 1936, gave plaintiff more than he was entitled to receive, and when he failed to comply with its terms the defendants were justified in asking the court to allow them to withdraw their offer. When such leave was granted the writ prayed for stood unsupported, and there was no alternative for the court below but to vacate the order and dismiss the petition.

The order is affirmed at appellant's costs.