659 P.2d 888

J.C. SCHWARTZMAN, Sue Schwartzman, Charlene S. Agenbroad, Jaylene S. Lovelace and Jolyne F. Schwartzman, Plaintiffs-Appellants,

v.

SCHWARTZMAN PACKING COMPANY, a New Mexico corporation, Ethel Volden, Harold Volden, Alfred Volden, Gary Schwartzman and Gertrude Schwartzman, individually and as the personal representatives of the Estate of Alfred Schwartzman, Deceased, Defendants-Appellees.

No. 14031.

Supreme Court of New Mexico.

Jan. 31, 1983.

Rehearing Denied March 8, 1983.

Michael Keeley, David N. Hernandez, Albuquerque, for plaintiffs-appellants.

George T. Harris, Jr., Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for Schwartzman Packing, defendants-appellees.

J. Mel Eaves, Peter Lindborg, Eaves & Darling, Albuquerque, for Volden & Gertrude Schwartzman, defendants-appellees.

Kaiser Michael, Albuquerque, for Gary Schwartzman, defendant-appellee.

## OPINION

FEDERICI, Justice.

Appellants (plaintiffs) brought this action against appellees (defendants) in the District Court of Bernalillo County. Plaintiffs are minority shareholders in Schwartzman Packing Company (Company), a New Mexico closely held family corporation. They alleged that the defendants, the majority shareholders of the Company, and the Company itself, engaged in various wilful acts of oppressive conduct toward the plaintiffs, resulting in damages to the corporate entity and to themselves. The plaintiffs sought relief by way of appointment of a master and receiver, money damages, repayment to the corporation of misappropriated assets and either dissolution of the corporate entity or other such equitable relief as would be appropriate. The district court dismissed the claims for appointment of a master and receiver and for repayment of assets, for failure to state a claim upon which relief could be granted, pursuant to N.M.R.Civ.P. 12(b)(6), N.M.S.A.1978 (Repl.Pamp.1980), and granted the Company's motion for partial summary judgment regarding sale of certain company real property. The remainder of the plaintiffs' claims were subsequently dismissed when the district court granted defendants' motion to dismiss for failure to prosecute pursuant to N.M.R. Civ.P. 41(b), N.M.S.A.1978 (Repl.Pamp. 1980). Plaintiffs appeal. We affirm as to all issues, except Issue VI.

Six issues are presented on appeal. Each issue will be discussed separately.

## I. DID THE TRIAL COURT ERR IN LIMITING PLAINTIFFS' REVIEW OF THE CORPORATION'S BOOKS, RECORDS AND OTHER RELEVANT CORPORATE BOOKS, AND NOT AWARDING PLAINTIFFS THE TEN PERCENT STATUTORY PENALTY?

Plaintiffs contend that the trial court limited plaintiffs' request for inspection and review of the defendants' corporate records to such an extent that it constituted a violation of the law and further contend that the court's action was against the manifest weight of the evidence. We disagree.

The record discloses that the following events transpired:

The defendant corporation informed plaintiffs more than two months before trial that it would cooperate with plaintiffs and permit a reasonable inspection of corporate books and records pursuant to Section 53–11–50(B), N.M.S.A.1978. Plaintiffs delayed almost two months from the time this notice was given until the date they scheduled their examination to begin. After examination had begun the corporation felt that the scope of examination being pursued by the plaintiffs was placing a severe burden upon the operations of the corporation because plaintiffs were sending teams of three to six accountants or bookkeepers to examine books and records of the corporation during normal business hours. The office of the general manager of the corporation was the only appropriate space at the corporate plant large enough to accommodate that number of accountants. This resulted in a disruption of the corporation business. As a result, plaintiffs were informed by defendants on August 11, 1981, that in the future all examination of corporate books and records was to take place after business hours, that is, after 5 p.m. After the examination had been limited by the court to evening hours, it became necessary for the corporation to furnish a representative to accommodate the accountants. Notwithstanding this accommodation, the accountants did not appear on some of the evenings and weekends.

After two days of examination during after business hours, plaintiffs filed a motion to compel defendants to allow examination from 8 a.m. to 5 p.m., Monday through Friday. At the time of the hearing on that motion, plaintiffs had spent almost two hundred man hours in the corporation's offices examining the books and records of

the corporation. In the light of this extensive prior examination of the books and records and the burden that would be imposed on the corporation by allowing examination during business hours, the trial court ordered that plaintiffs were to have one additional day to use as many accountants as they desired and work as long as they deemed necessary for examination of matters which had occurred within the last six months, and for concluding their examination. Plaintiffs' accountants continued to examine the corporate books and records for another thirty or forty hours. Thereafter, they voluntarily ceased their examination.

█ This is a case of first impression in New Mexico on the question of a shareholder's right to inspect a corporation's books and records. There is little doubt that applicable statutes and case law grant to shareholders the right to inspect at reasonable times and at reasonable places, a corporation's books and records for proper purposes. § 53–11–50. *See* _____ 5 W. Fletcher, Cyclopedia of the Law of Private Corporations § 2242 (rev. perm. ed. 1976); 18 Am.Jur.2d *Corporations* § 197 (1965); Annot., 174 A.L.R. 262, 286 (1948); 18 C.J.S. *Corporations* § 502 (1939).

█ This right was recognized under the common law and exists independently of statute. *Tucson Gas & Electric Company v. Shantz,* 5 Ariz.App. 511, 428 P.2d 686 (1967).

Section 53–11–50(B) provides:

B. Any person who shall have been a holder of record of shares or of voting trust certificates therefor at least six months immediately preceding his demand or who shall be the holder of record of, or the holder of record of voting trust certificates for, at least five percent of all the outstanding shares of the corporation, upon written demand stating the purpose thereof, may examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes and record of shareholders and make extracts therefrom. Any officer or agent who, or a corporation which, shall refuse

to allow any such shareholder or holder of voting trust certificates, or his agent or attorney, to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to the shareholder or holder of voting trust certificates in a penalty of ten percent of the value of the shares owned by the shareholder, or in respect of which such voting trust certificates are issued, in addition to any other damages or remedy afforded him by law.

The New Mexico statute was adopted verbatim from Section 52 of the ABA Model Corporation Act. It is not a limitation or abrogation of the common law right of inspection and is sometimes described as an extension or even an enlargement of the right as recognized under the common law. *Bishop's Estate v. Antilles Enterprises,* 252 F.2d 498 (3d Cir.1958); *Tucson Gas & Electric Company v. Schantz, supra; Leisner v. Kent Investors Inc.,* 62 Misc.2d 132, 307 N.Y.S.2d 293 (1970); *Meyer v. Ford Industries, Inc.,* 272 Or. 531, 538 P.2d 353 (1975); *Texas Infra-Red Radiant Company v. Erwin,* 397 S.W.2d 491 (Tex.Civ.App.1965) (writ ref'd n.r.e.). *See generally* Model Business Corp. Act § 52 (1971) (amended 1977); 18 C.J.S. *Corporations* § 502 (1939).

However, the right of a shareholder to examine books and records under Section 53–11–50 is not unlimited. Inspection must be made at "reasonable times", and as the Supreme Court of Pennsylvania said in *Ruby v. Penn Fibre Board Corporation,* 326 Pa. 582, 586, 192 A. 914, 916 (1937):

What is reasonable and proper necessarily depends upon the circumstances of each case and must be determined by the exercise of the discretion of the court enforcing the right. The problem is essentially one of the relative convenience of all parties concerned.... [T]he examination should not be allowed at a time or place or under conditions which would unduly interfere with the regular course of business of the company.

The cases cited by plaintiffs, including Illinois cases, also recognize that the right

of examination must be exercised at reasonable and proper times. *Weigel v. O'Connor,* 57 Ill.App.3d 1017, 15 Ill.Dec. 75, 373 N.E.2d 421 (1978).

A trial court must of necessity have some discretion in determining when and in what manner the right of examination should be exercised. Under the facts in this case, it was not an abuse of discretion for the trial court to limit examination to regular business hours in addition to the 222 hours of examination which had previously been allowed.

Plaintiffs also urge that the statutory penalty provided by Section 53–11–50(B) should be imposed against officers or directors of the corporation. The statute provides for imposition of a penalty upon an officer or agent who "shall, refuse to allow" a qualified shareholder to examine books and records of the corporation. Insofar as we can determine from the record, no officer or agent of the corporation refused any plaintiff access to its books and records. The penalty is not applicable here. In any event, the imposition of a penalty under Section 53–11–50(B) is within the discretion of the trial court. *Wood, Walker & Co. v. Evans,* 461 F.2d 852 (10th Cir.1972); *McCormick v. Statler Hotels Delaware Corporation,* 55 Ill.App.2d 21, 203 N.E.2d 697 (1964). Under the facts in this case we find no abuse of discretion in the trial court's refusal to impose a penalty on officers or agents of the corporation.

## II. DID THE TRIAL COURT ERR IN DISMISSING PLAINTIFFS' FIRST CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED?

By its first affirmative defense, the defendant corporation asserted that plaintiffs' first cause of action should be dismissed for failure to state a claim. It is well settled that assertion of failure to state a claim upon which relief can be granted can be made either by motion or by affirmative defense. N.M.R.Civ.P. 12(b). The corporation's first affirmative defense was a proper means of raising this issue.

The corporation's first affirmative defense was stated with sufficient particularity. Courts have generally given a liberal interpretation to the requirement of particularity in a motion for affirmative defense. *Edmonds v. United States,* 148 F.Supp. 185 (D.C.E.D.Wis.1957). An assertion of failure to state a claim is sufficient. This is the rule in federal courts, and federal construction of rules, which are similar to our State rules, is persuasive. *Kenney v. Fox,* 132 F.Supp. 305 (W.D.Mich.1955), *aff'd* 232 F.2d 288 (6th Cir.), *cert. denied,* 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956); *Lopez v. Singh,* 53 N.M. 245, 205 P.2d 492 (1949).

Plaintiffs should not have been surprised by the court's hearing on the matter of dismissal for failure to state a claim. The corporation submitted a request for hearing in the usual fashion requesting one-half hour of time to hear its "Motion for Protective Order" and "Defendant, Schwartzman Packing Company's First Defense to First Cause of Action."

The procedural propriety of the corporation's motion to dismiss aside, the trial court did not abuse its discretion in dismissing the first cause of action. Plaintiffs in their first cause of action requested that corporate funds improperly received by shareholders be restored to the corporation and that a special master be appointed to conduct an accounting and report his findings to the court. Neither the appointment of a special master nor the requirement of an accounting is appropriate.

N.M.R.Civ.P. 53, N.M.S.A.1978 (Repl.Pamp.1980), governs the appointment of special masters, and subsection (b) of that rule provides that reference to a master shall be the exception and not the rule. The appointment of a special master is within the discretion of the trial judge. This Court has left the appointment of special masters "entirely to the discretion of the district judge in civil cases." *State v. Doe,* 93 N.M. 621, 624, 603 P.2d 731, 734 (Ct.App.1979). The trial court's denial of the request for a special master was proper.

■ Dismissal of the first cause of action was also appropriate on another ground. An action for an accounting should not be maintained by shareholders in their individual capacities. The corporation may sue to recover property of the corporation or to recover damages for injury done to it. 13 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 5911, 5924 (rev. perm. ed. 1980). At § 5924 Fletcher states:

A stockholder cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, negligence or the like, on a cause of action which belongs to the corporation. (Footnote omitted.) In other words, the remedial rights of minority stockholders with respect to wrongs committed against the corporation by the officers and directors in the management of corporate affairs are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation. (Footnote omitted.)

Plaintiffs' first cause of action should have been brought, if at all, as a derivative suit.

■ In their first cause of action, plaintiffs also seek an accounting from the corporation and its officers or directors. If the officers or directors have misused or mismanaged corporate funds, those funds to be restored belong to the corporation and not to the plaintiffs individually. In fact, plaintiffs request that the funds be restored to the corporation. The plaintiffs' primary claim in the first cause of action is injury to the corporation. Consequently, a derivative action is required. A stockholder cannot sue a director or other corporation officers for mismanagement on a cause of action belonging to the corporation. *Johnson v. American General Insurance Co.,* 296 F.Supp. 802 (D.D.C.1969); *Schaffer v. Universal Rundle Corporation,* 397 F.2d 893 (5th Cir.1968); *Tessari v. Herald,* 207 F.Supp. 432 (N.D.Ind.1962).

Moreover, the trial court has wide discretion in interpreting whether a complaint states a derivative or primary claim, and the nature of the claim is determined from the body of the complaint. 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5912 (rev. perm. ed. 1980). The trial court's dismissal of the first cause of action was proper.

III. DID THE TRIAL COURT ERR IN GRANTING TO DEFENDANTS SUMMARY JUDGMENT ON PLAINTIFFS' SECOND CAUSE OF ACTION?

Plaintiffs contend that oral testimony should not have been allowed in determining whether summary judgment should be granted. *Summers v. American Reliable Insurance Company,* 85 N.M. 224, 511 P.2d 550 (1973) is the leading case allowing the use of oral testimony to support a summary judgment motion. That case also recognizes that N.M.R.Civ.P. 43(c), N.M.S.A.1978 (Repl.Pamp.1980) (formerly Rule 43(e)), "permits the court to hear oral testimony at a hearing on a motion." 85 N.M. at 226, 511 P.2d at 552. The pleading seeking summary judgment was a motion. Rule 43(c) states:

When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.

*Summers, supra,* and Rule 43 support the trial court's decision to allow oral testimony.

■ A party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact once a prima facie showing is made by the movant. *C & H Const. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979). Defendants made a prima facie case and plaintiffs presented no evidence of their own other than through the defendants' witness, Thomas Burrage. The trial court did not err in granting summary judgment to defendants on plaintiffs' second cause of action.

## IV. & V. IS THERE SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS OF FACT· AND CONCLUSIONS OF LAW ON THE ISSUE OF OPPRESSIVE CONDUCT AND MISAPPLICATION OF ASSETS AND OTHER RELEVANT ISSUES?

▮ The trial court made certain findings of fact which are pertinent to this issue. They are: That the acts of the defendants were not oppressive nor was there mismanagement of the corporate affairs amounting to oppressive conduct; that the corporate assets were not misapplied or wasted; that the plaintiffs had full access to the books and records of the corporation and that they were not maintained in an inaccurate and inequitable manner; that all shareholders had utilized corporate assets for personal purposes. However, these activities had ceased at the time this action was filed. And further, that the expectations of the minority shareholders had not been jeopardized and there was insufficient evidence that irreconcilable hostility among the shareholders would support grounds for the relief sought by plaintiffs; that the plaintiffs had at all times fully participated in the management of the corporation and there was insufficient evidence to establish that the majority had failed to consult with the minority; and that the defendants had not breached their fiduciary duty to the plaintiffs.

The trial court refused to make certain findings and conclusions submitted by the plaintiffs and plaintiffs contend that this was an abuse of discretion. We find substantial evidence in the record to support the trial court's findings and conclusions, and we find no abuse of discretion on the part of the trial court in denying plaintiffs' requested instructions nor do we find any error as a matter of law. To recite here all the evidence in the record which supports the trial court's findings of fact would require pages. We have reviewed the record and it is abundantly clear that there is more than substantial evidence to support the trial court's findings and conclusions.

## VI. DID THE TRIAL COURT PROPERLY ALLOW EXPERT WITNESS FEES AND EXPENSES AS "COSTS OF SUIT?"

Plaintiffs have objected to the allowance to the defendants as "costs of suit" the total sum of $2,144 for expert witness fees and expenses. Defendants contend they utilized Norman Brammell and Thomas Burrage as expert witnesses at trial, although Burrage was subpoenaed by plaintiffs. In their cost bill the defendants requested expert witness fees for both Brammell and Burrage in the amount of $750 each. They also sought per diem witness fees for Mr. Ellis McClure in the amount of $44 and mileage fees for Brammell in the amount of $600. In total, defendants sought expert witness fees and witness expenses in the total amount of $2,144. Plaintiffs opposed any award of fees for defendants' experts that exceeded the statutory limit of a total of $750 for all expert witnesses. The trial court entered an order awarding defendants expert witness fees and costs in the amount of $2,144. We modify the award of expert witness fees and costs to the amount of $1,394.

Section 38–6–4(A), (B), N.M.S.A.1978, reads:

A. Witnesses shall be allowed no fees for services, but shall receive per diem expense and mileage. . . .

B. The district judge in any case pending in the district court may order the payment of a reasonable fee, to be taxed as costs, *in addition to the per diem and mileage as provided for in Subsection A of this section, for any witness who qualifies as an expert and who testifies in the cause in person or by deposition. The additional compensation* shall include a reasonable fee to compensate the witness for the time required in preparation or investigation prior to the giving of the witness's testimony. The expert witness fee which may be allowed by the court shall be paid to only one expert witness unless the court finds that the testimony of more than one expert was reasonably necessary to the prevailing party and the expert testimony was not cumulative. *The total expert witness compensation*

which may be allowed by the court to the prevailing party shall not exceed seven hundred fifty dollars ($750). (Emphasis added.)

The term "compensation" used in Subsection (B) relates to an expert witness's fee for testifying and also for payment of time required of the witness in preparation or investigation prior to testimony. The total expert witness compensation for the witness's appearance and testimony and for preparation and investigation cannot exceed a total of $750 for *all* witnesses. *Schober v. Mountain Bell Tel.*, 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980). *Espinoza v. Northern NM Community College*, 21 N.M.St.B.Bull. 340 (Ct.App.), —— N.M. ——, —— P.2d —— (Ct.App.1981), *rev'd.* (March 30, 1982), was specifically reversed on this issue. However, the $750 fee is in addition to per diem and mileage allowed under Subsection (A). The trial court improperly allowed the statutory maximum of $750 for both witnesses Brammell and Burrage. Accordingly, the trial court should have allowed a maximum of $750 for all witnesses, reimbursement to Brammell for mileage in the amount of $600 and a witness fee for McClure in the amount of $44, for a total of $1,394.

The judgment of the trial court is affirmed as to Issues I through V. The trial court award of expert witness fees is modified as to Issue VI.

The cause is remanded to the district court for modification of its judgment consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and GARCIA, District Judge, concur.