This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-2,**

Plaintiff-Appellee,

v.                                                                 NO. 30,354

**ERASMO QUINTANA, if living; if deceased, THE ESTATE OF ERASMO QUINTANA, Deceased; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE,**

Defendants,

and

**GRACE QUINTANA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Susan C. Little & Associates, P.A.

Karen Howden Weaver
Albuquerque, NM

for Appellees

United South Broadway Corp.
Erin O. Anderson
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

When Defendant Grace Quintana was unable to make her mortgage payments after her husband died, Plaintiff Bank of America (Bank), the successor to the original lending institution, sued to collect on the note and to foreclose on the mortgage. The district court granted summary judgment to Bank, and Mrs. Quintana appeals. We hold that Mrs. Quintana failed to present evidence that would create an issue of fact warranting a trial. We therefore affirm.

**BACKGROUND**

On February 27, 2007, Mrs. Quintana and her husband executed a promissory note payable to lender First Franklin Financial Corp. (First Franklin Financial). The note had an adjustable interest rate ranging from 6.9 percent, initially, to 12.9 percent, and it provided for a balloon payment on the note's maturity date, April 1, 2037. The note was secured by a mortgage on the Quintanas' home. The mortgage provided that First Franklin Financial was the lender and that Mortgage Electronic Registration

Systems, Inc. (MERS) was "a separate corporation that is acting solely as a nominee for [l]ender and [l]ender's successors and assigns." MERS was the mortgagee under the mortgage. The loan's proceeds paid off an existing mortgage for the Quintanas and provided them with cash in the amount of $11,773.70.

Documents in the record show that on January 29, 2009, MERS, as nominee for First Franklin Financial, assigned the mortgage to LaSalle Bank National Association (LaSalle), as trustee for Merrill Lynch First Franklin Mortgage Loan Trust. The assignment expressly states that the assignment was "effective the 5th day of M[arch] 2007." LaSalle merged with Bank, effective October 17, 2008.

Approximately one month after the Quintanas signed the note and the mortgage, Mr. Quintana died. Following Mr. Quintana's death, Mrs. Quintana made the mortgage payments until October 2008. The last payment she made on the note was on October 8, 2008. On December 2, 2008, First Franklin Loan Services, which was the loan servicing entity and not the same as First Franklin Financial, the initial lender, sent a letter to Mr. and Mrs. Quintana stating that the account was past due and that "[t]his arrearage constitutes a breach of your mortgage note obligation." The letter went on to state that the Quintanas had until January 1, 2009, to bring the account current and that failure to do so would lead to acceleration of the note's due date and initiation of foreclosure proceedings.

Having received no further payments, LaSalle, the mortgage's assignee, filed a complaint for foreclosure against the Quintanas on January 29, 2009. Before Mrs. Quintana filed an answer, a first amended complaint was filed showing Bank, as

3

successor by merger to LaSalle, as Plaintiff. Mrs. Quintana answered and raised the following as defenses: (1) Bank was not the real party in interest and (2) the mortgage note violated the Home Loan Protection Act (HLPA).

Bank ultimately filed a motion for summary judgment and default in which it sought judgment in the amount of the note's net principal balance, plus interest, costs of collection, attorney fees, and a judgment of foreclosure on the property. Following a hearing, the district court asked the parties for additional briefing. The court then entered summary judgment in favor of Bank and against Mrs. Quintana. This appeal followed.

**DISCUSSION**

Mrs. Quintana makes five arguments in support of her contention that summary judgment was improper, which we consolidate into four issues: (1) whether there are issues of fact related to Bank's right to enforce the note and mortgage, (2) whether Bank is a holder in due course of the note, (3) whether the district court improperly failed to consider her defenses based on HLPA and the Unfair Practices Act (UPA), and (4) whether there are genuine issues of fact regarding Mrs. Quintana's application for relief under the federal Home Affordable Modification Program (HAMP) and regarding Bank's denial of loan modification.

"On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081,

4

¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**1.** **There Are No Issues of Fact Regarding Bank's Right to Enforce the Note and Mortgage**

Mrs. Quintana claims that (1) Bank failed to prove its right to enforce the note and (2) there are issues of fact regarding Bank's right to enforce the mortgage. We consider each of these arguments in turn.

**a.** **Bank's Right to Enforce the Note**

Mrs. Quintana appears to contend that Bank proved only that it had possession of the note and that mere possession was not enough to give Bank the right to enforce the note. She also appears to argue that MERS' allegedly flawed assignment of the *mortgage* somehow negatively impacted Bank's ability to enforce the *note*. Therefore, we first consider the nature of the note and its relation to the mortgage.

There is no dispute that the note signed by the Quintanas is a negotiable instrument. *See* NMSA 1978, § 55-3-104 (1992) (defining negotiable instrument). In this case, the note as drafted was payable to the order of First Franklin Financial and stated that the borrowers understood that First Franklin Financial could transfer the note. The note also reflected two endorsements: one to the order of First Franklin

5

Financial and one from First Franklin Financial without a specific payee identified. This second endorsement meant that the note was payable to the note's bearer. *See* NMSA 1978, § 55-3-109(a)(2) (1992) (stating that an order is payable to bearer if it "does not state a payee"). Because Bank had possession of the note, Bank was the holder of the note. *See* NMSA 1978, § 55-1-201(21)(A) (2005) (defining "holder" as "the person in possession of a negotiable instrument that is payable . . . to bearer"). Thus, Bank was entitled to enforce the note. NMSA 1978, § 55-3-301 (1992) ("'Person entitled to enforce' an instrument means (i) the holder of the instrument.").

Mrs. Quintana appears to concede that Bank is the holder of the note. However, she seems to claim that only a holder in due course could enforce the note and that Bank is not a holder in due course. Her argument is unavailing because the Uniform Commercial Code clearly states that a holder may enforce a note. Section 55-3-301. Later in this opinion we consider the question of whether Bank is a holder in due course.

Bank's status as the note's holder meant that Bank could pursue Mrs. Quintana for any amounts owing on the note. The note is separate from the mortgage, and the mortgage serves as security for payment of the note. The mortgage specifically references the note and states that it "secures to [First Franklin Financial]: (i) the repayment of the [l]oan." Therefore, if the assignment of the mortgage to Bank was

6

somehow flawed, as Mrs. Quintana contends, it had no effect on Bank's ability to enforce the note except to the extent that Bank would have no security from which to seek payment. Absent the mortgage, Bank could still pursue Mrs. Quintana for payment of the note. As a result, we conclude that Bank, by producing the bearer note in its possession, proved that it had the right to enforce the note.

**b.      There Are No Issues of Fact Regarding Bank's Right to Enforce the Mortgage**

We turn now to Mrs. Quintana's arguments regarding the validity of the mortgage assignment. The assignment of mortgage states that MERS, as nominee for First Franklin Financial, assigned to LaSalle (which merged with Bank on October 17, 2008) the mortgage of February 27, 2007, executed by the Quintanas. The assignment then states: "Witness its hand this 29th day of J[anuary] 2009, but effective the 5th day of M[arch] 2007," and it is signed on behalf of MERS by Krystal Hall, the assistant secretary for assignments.

In questioning the validity of the mortgage assignment, Mrs. Quintana devotes many pages of her brief in chief to a discussion of MERS and its role as nominee under the mortgage. However, she ultimately states that she is "not challenging MERS['] authority to act as nominee which is clearly spelled out in the mortgage." Instead, Mrs. Quintana challenges "[K]rystal Hall's authority to claim any rights other

7

than a bare transferee or straw man for the beneficial owner which appears to be LaSalle."

Bank produced the unanimous written consent of First Franklin Financial's board of directors granting certain employees of Security Connections, Inc. (SCI), including Krystal Hall, "all authority necessary to lawfully and properly prepare, execute, witness, attest and deliver assignments . . . and such other documents that will enable SCI to effect the transfer . . . of [First Franklin Financial's] sale of mortgage-secured loans." Mrs. Quintana appears to argue that while this corporate resolution may have given Hall the authority to assign a mortgage on behalf of First Franklin Financial, it did not give her the authority to do so on behalf of MERS, which was the entity conveying the assignment.

We are not persuaded. As Mrs. Quintana acknowledges, the mortgage itself provided that MERS was the nominee for First Franklin Financial and its successors, and it was the mortgagee. It further stated that MERS, as nominee for First Franklin Financial and its successors, "holds only legal title to the interests granted by [the Quintanas] . . . , but, if necessary to comply with law or custom" it also had the right "to exercise any or all of those interests, including, but not limited to, the right to foreclose . . . and to take any action required of [First Franklin Financial]." These provisions gave MERS the right to assign the mortgage on behalf of First Franklin

8

Financial, and the corporate resolution gave Krystal Hall the right to do the same. Mrs. Quintana has not offered any evidence suggesting any impropriety in Hall's acting through MERS to execute the mortgage assignment. *See Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 441, 659 P.2d 888, 893 (1983) ("A party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact once a prima facie showing is made by the movant."). Both Hall and MERS, acting together, had the authority to assign the mortgage on behalf of First Franklin Financial.

Mrs. Quintana also seems to challenge the validity of the retroactive effective date stated in the assignment. In support, Mrs. Quintana relies on a New York case and an Ohio case holding that an entity that is assigned a mortgage after a foreclosure action is filed does not have standing to pursue the foreclosure action. *See Countrywide Home Loans v. Gress*, 888 N.Y.S.2d 914, 914-15 (N.Y. App. Div. 2009); *Wells Fargo Bank, N.A. v. Byrd*, 178 Ohio App. 3d 285, 2008-Ohio-4603, 897 N.E.2d 722, ¶ 16.

Mrs. Quintana's argument fails because the factual scenario presented in the New York and Ohio cases does not exist in the present case. The document assigning the mortgage to LaSalle was dated January 29, 2009, with an effective date of March

5, 2007. LaSalle had merged with Bank on October 17, 2008. Thus, on the date the original complaint was filed, January 29, 2009, Bank (in accordance with its merger with LaSalle) was the mortgagee, even without reference to the retroactive effective date of the assignment. The first amended complaint, naming Bank as plaintiff instead of LaSalle, was filed on March 5, 2009, which was also after the mortgage was assigned to LaSalle, and LaSalle had already merged with Bank.

**2.     Whether Bank Is a Holder in Due Course**

If Bank holds the note as a holder in due course, Mrs. Quintana is statutorily precluded from asserting certain defenses to Bank's enforcement of the note. *See* NMSA 1978, § 55-3-302 (1992) (defining holder in due course); *see also* NMSA 1978, § 55-3-305(b) (2009) (stating that a holder in due course seeking to enforce an obligation is subject only to defenses enumerated in Subsection 55-3-305(a)(1) and is not subject to other specific defenses). Mrs. Quintana argues that Bank is not a holder in due course of the note and, therefore, that the note is subject to the defenses Mrs. Quintana raised under the HLPA and the UPA.

As we have discussed, Bank is the holder of the note. In order to establish that it is a holder in due course, Bank must show that it took the note "(i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored," and without notice of other circumstances that are not applicable here. Section 55-3-

302(a)(2). Mrs. Quintana claims that there is an issue of fact regarding whether Bank knew or should have known that the note was in default when it took possession of the note.

Mrs. Quintana assumes that the note was transferred from First Franklin Financial to Bank at the same time the mortgage was assigned to Bank (via LaSalle, which merged with Bank on October 17, 2008)—January 29, 2009. If she is correct, then Bank acquired the note after First Franklin Loan Services sent the demand letter to the Quintanas in December 2008. Bank counters that the note was transferred to it soon after the Quintanas signed it in February 2007, and the effective date stated on the mortgage assignment, March 5, 2007, seems to support this view. While there is nothing on the note indicating when Bank came into possession, Bank submitted the affidavit of Steven Baranet, the vice president of Bank's servicing agent, who attested that Bank "took the [n]ote for value in good faith and without any notice that it was overdue or had been dishonored or of any defenses against it." Thus, this affidavit is prima facie evidence of the elements of holder-in-due-course status.

Mrs. Quintana contends that Baranet's affidavit was inadmissible because it was not based on personal knowledge about the practices of First Franklin Financial. We fail to see how this has any bearing on Bank's status as a holder in due course. The critical information is what Bank knew about the note when it took possession, not the

practices of First Franklin Financial. Baranet attested that he was employed by Bank's servicing agent and that his affidavit was based on his personal knowledge about the records of the regularly conducted business activity related to the property, note, and mortgage at issue in this case. Unless Mrs. Quintana produced some evidence calling these sworn statements into question, and there is no indication that she did, the district court could properly rely on them in the context of Bank's summary judgment motion. *See Roth v. Thompson*, 113 N.M. 331, 334-35, 825 P.2d 1241, 1244-45 (1992) (explaining that "[t]he movant need only make a prima facie showing that he is entitled to summary judgment" whereupon "the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits").

Mrs. Quintana also mentions issues of fact regarding a written request for a breakout of fees and costs that she sent in April 2009, apparently to the loan servicer, First Franklin Loan Services. She maintains that Bank disputed having received the letter and that it produced its own printout of transactions on the account. We do not understand how this dispute bears on the issues in this case. Again, if Mrs. Quintana had a basis for disputing the printout Bank produced, then it was her obligation to produce evidence supporting her contentions. *See Dow v. Chilili Coop. Ass'n*, 105 N.M. 52, 54-55, 728 P.2d 462, 464-65 (1986) (explaining that a party opposing

summary judgment may not simply argue that evidentiary facts requiring a trial on the merits may exist). She did not do so.

In summary, there are no disputed issues of fact concerning Bank's status as a holder in due course. Bank produced prima facie evidence establishing the elements of that status, and Mrs. Quintana did not produce any evidence creating a dispute. *See Schwartzman*, 99 N.M. at 441, 659 P.2d at 893 (stating that "[a] party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact once a prima facie showing is made by the movant").

**3.     The Bank's Status as a Holder in Due Course Shields it from Defenses under the HLPA and the UPA**

Mrs. Quintana argues that the district court improperly failed to consider her defenses under the HLPA and the UPA. However, she acknowledges that holder-in-due-course status would shield Bank from these defenses. We agree. Mrs. Quintana's contentions relate to the conduct of the initial lender, First Franklin Financial, and a holder in due course is not subject to defenses that can be asserted against the note's original payee. *See* § 55-3-305(a)(2)-(3), (b) (stating that a holder in due course is not subject to "a defense of the obligor . . . that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract" or a defense of "a claim in recoupment of the obligor against the original payee of the

13

instrument if the claim arose from the transaction that gave rise to the instrument"); *see also Cadle Co. v. Wallach Concrete, Inc.*, 120 N.M. 56, 59, 897 P.2d 1104, 1107 (1995) (stating that "[a] holder in due course of a negotiable instrument takes the instrument free from any personal defense or claim that the maker may assert"). Therefore, because we have held that Bank made a prima facie showing of its status as a holder in due course, we need not address Mrs. Quintana's claims under the HLPA and the UPA.

**4.     There Are No Issues of Fact Regarding the HAMP and Loan Modification Applications**

Mrs. Quintana contends that there were issues of fact regarding her applications for loan modification that precluded summary judgment. In support of her claims and in opposition to Bank's motion for summary judgment, Mrs. Quintana offered only one item of evidence in the district court, which was her affidavit. In her affidavit, she attested that she "would like to enter into a loan modification agreement based on [her] fixed income" and that she had first contacted the lender about such a modification after her husband's death in 2007. She "continued paying for as long as [she] could" but she "no longer had any money and they told [her] they couldn't do anything for [her]." She recited her health problems and her desire to stay in her home. Mrs. Quintana did not submit any other evidence regarding her applications for a loan modification.

Bank submitted evidence of telephone logs, which are fairly cryptic. However, it appears that Bank and Mrs. Quintana had several telephone discussions regarding possible loan modifications beginning in February 2008. Bank also submitted two letters from First Franklin Loan Services to Mrs. Quintana. The first one, dated September 25, 2009, notified Mrs. Quintana that she did not meet one or more eligibility requirements for a HAMP modification. Apparently, First Franklin Loan Services was supposed to checkmark which eligibility requirement(s) Mrs. Quintana did not meet, but none of the items were checked. The second letter, dated October 15, 2009, notified Mrs. Quintana that her request for a loan modification was denied because "[c]urrent income does not support modified mortgage payment."

It appears that Mrs. Quintana raised her desire for a loan modification in an effort to obtain equitable relief from the district court. We question whether the desire for equitable relief constitutes a viable defense to Bank's claims for enforcement of the note and foreclosure. However, even if we assume that an equitable remedy was available to her, Mrs. Quintana did not provide the district court with any evidence on which to base relief. There is nothing in the record to refute Bank's contention that Mrs. Quintana does not have sufficient income to pay even a modified loan. Indeed, Mrs. Quintana's attorney acknowledged at the summary judgment hearing that Mrs. Quintana's only income is Social Security disability

15

income and that her income is not increasing. As a result, the only evidence in the record makes a prima facie showing that Mrs. Quintana does not qualify for a loan modification. There is no countervailing evidence creating an issue of fact. *See Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 9, 124 N.M. 633, 954 P.2d 65 (explaining that summary judgment is proper where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists).

In summary, we recognize that harsh lending practices by some financial entities have imposed hardships on consumers, although we express no opinion about whether the loan made to the Quintanas reflects those harsh practices. We also appreciate the difficulties suffered by Mrs. Quintana as the result of her husband's apparently unexpected death. Our sympathy for Mrs. Quintana notwithstanding, the fact remains that Bank established a prima facie case that it was entitled to enforce the note and foreclose on the mortgage, and Mrs. Quintana did not counter with evidence giving rise to disputed issues of fact. The district court properly granted Bank summary judgment.

**CONCLUSION**

We affirm the district court's judgment.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**J. MILES HANISEE, Judge**