This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**BAC HOME LOANS SERVICING, L.P.,
f/k/a COUNTRYWIDE HOME LOANS
SERVICING, L.P.,**

Plaintiff-Appellee,

v.                                                                          NO. 31,925

**KAREN Y. DURAN and FRED M. MONTANO,**

Defendants-Appellants,

and

**FIRST STATE MORTGAGE; FIRST STATE BANK
NM; UNITED STATES OF AMERICA BY AND THROUGH
THE INTERNAL REVENUE SERVICE; THE UNKNOWN
SPOUSE OF KAREN Y. DURAN, IF ANY; THE UNKNOWN
SPOUSE OF FRED M. MONTANO, IF ANY,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Clay Campbell, District Judge**

Castle Stawiarski, LLC
Peggy A. Whitmore
Albuquerque, NM

for Appellee

Karen Y. Duran
Fred Montano
Albuquerque, NM

Pro Se Appellants

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     This case involves the foreclosure of a mortgage on a home owned by Defendants-Appellants Karen Duran and Fred Montano (Defendants).  Defendants appeal the district court's decision granting summary judgment in favor of Plaintiff-Appellee BAC Home Loans Servicing, L.P., formerly known as Countrywide Home Loans Servicing, LP (BAC).  We hold that Defendants failed to present evidence that would create an issue of fact warranting a trial.  We therefore affirm.

**BACKGROUND**

{2}     On May 7, 2003, Duran executed a promissory note payable to First State Bank NM (First State).  The original principal sum of the note was $322,700 and had a fixed interest rate of 6.625% per annum.  The note was secured by a mortgage on Duran's home.  The mortgage provided that First State was the lender and that Mortgage Electronic Registration Systems, Inc. (MERS) was "a separate corporation that is acting solely as a nominee for [l]ender and [l]ender's successors and assigns."  MERS was the mortgagee under the mortgage.  Soon after she obtained the mortgage, Duran conveyed the property by warranty deed to herself and Fred Montano as joint tenants.

{3} Duran made the mortgage payments until May 1, 2008. Documents in the record show that, on February 12, 2009, a notice of intent to accelerate was sent to Duran, stating that the note was in "serious default because the required payments have not been made." The letter went on to say that Duran had until March 14, 2009, to bring the account current and that failure to do so would result in acceleration of the note's due date and initiation of foreclosure proceedings. Lastly, the letter provided that, in the event that Duran was unable to cure the default on or before March 14, 2009, Duran had "various options" available to her to prevent a foreclosure sale of the property.

{4} Having received no further payments, BAC, the mortgage's assignee, filed a complaint for foreclosure against Defendants on September 17, 2009. MERS had previously assigned the mortgage to BAC. BAC filed a motion for summary judgment on August 6, 2010, in which it sought judgment in the amount of the note's net principal balance, plus interest, costs of collection, attorney fees, and a judgment of foreclosure on the property. Defendants timely filed a response, although they provided no documents or affidavits in support of their opposition to the motion. On September 22, 2010, the district court heard argument on the motion for summary judgment and, although the court granted the motion, it ordered BAC to withhold submission of an order until such time as Defendants were afforded a reasonable opportunity to qualify for loss mitigation programs. Defendants were not accepted

into a loss mitigation program and, on February 3, 2011, BAC requested the district court to enter summary and default judgment. On September 23, 2011, the district court entered judgment in favor of BAC and against Defendants. This appeal followed.

**DISCUSSION**

**Standard of Review**

{5} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. "All reasonable inferences are construed in favor of the non-moving party." *Id.* (internal quotation marks and citation omitted).

{6} Before we turn to the issues in this case, we express our concern with the briefing by both parties. First, Defendants' brief in chief fails, in large measure, to conform to the New Mexico Rules of Appellate Procedure. Although lengthy, the brief frequently fails to cite the record, the table of authorities is not arranged as required and does not match the page references, and the brief fails to present the evidence and law necessary to support its argument. *See* Rule 12-213(A) NMRA. "Although pro se pleadings are viewed with tolerance, a pro se litigant, having chosen

4

to represent himself, is held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." *Newsome v. Farer*, 103 N.M. 415, 419, 708 P.2d 327, 331 (1985) (emphasis and citation omitted). More problematic is BAC's answer brief, which responds to Defendants' arguments employing the incorrect standard of review. The standard of review in this case is *not*, as BAC suggests, whether there is substantial evidence to support the district court's findings but only whether there exists any genuine issues of material fact precluding the entry of judgment as a matter of law. A grant of summary judgment, as was the case here, presupposes that there are no triable issues of fact, not that there is substantial evidence to support the facts pled. We therefore limit our review to the motion for summary judgment, including the supporting affidavit and documents, response, and reply, and we do not consider any other exhibits referenced in the briefs on appeal.

{7} Defendants make four arguments in support of their contention that genuine issues of fact exist and that, therefore, the district court erred in granting summary judgment in favor of BAC. We understand Defendants' arguments to be as follows: (1) the affidavit of Gregory J. Price is not based on any first-hand knowledge; (2) BAC does not have the right to enforce the note and mortgage because MERS did not have a right to assign the mortgage; (3) BAC is not a holder in due course; and (4) the

case should be dismissed for lack of jurisdiction because BAC did not produce the original promissory note. We address each argument in turn.

**Gregory Price Affidavit**

{8}    In support of its motion for summary judgment, BAC attached the sworn affidavit of Gregory J. Price. Price, the assistant secretary for BAC, stated that he is a duly authorized agent of BAC and that he was responsible for maintaining Duran's loan file. He further provided that, based on his knowledge and review of the loan file, specifically including the note and mortgage attached as Exhibits A and B to the complaint, BAC is the legal holder of the note at issue that was executed by Duran; the note is secured by Duran's mortgage; the note and mortgage were assigned to BAC; and BAC is the owner and holder in due course of the note and mortgage. Finally, the affidavit provides that Duran is in default in payment of the principal and interest on the note and mortgage, and it lists the sums due and owing to BAC from Duran.

{9}    Defendants argued below, as they do on appeal, that they have never had any dealings with Price and have never communicated with him. Further, they argue that Price does not state he has any first-hand knowledge concerning the note and mortgage, and he failed to provide any credentials that would qualify him as an expert in this matter. On this basis, Defendants contend that BAC failed to produce prima facie evidence of ownership of the note. We disagree.

**{10}** For purposes of summary judgment, BAC came forward with admissible evidence in the form of a sworn affidavit from Price and made the necessary prima facie showing that it was entitled to summary judgment. Consequently, the burden then shifted to Defendants to demonstrate the existence of specific evidentiary facts that would require trial on the merits. *See Roth v. Thompson*, 113 N.M. 331, 334-35, 825 P.2d 1241, 1244-45 (1992). Here, Defendants simply argue that evidentiary facts contained in the Price affidavit are not based on personal knowledge and that Price is not qualified as an expert. Defendants' unsupported assertions are not evidence that the district court or this Court can rely upon in a summary judgment proceeding. *See Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 441, 659 P.2d 888, 893 (1983) ("A party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact once a prima facie showing is made by the movant."). Accordingly, we conclude that the sworn statements in the affidavit were admissible, BAC made a prima facie showing that it was entitled to summary judgment, and Defendants presented no genuine issue of fact to defeat that showing.

**MERS**

**{11}** Defendants contend that MERS is an "unconventional securitization process" and, on that basis, they challenge the foreclosure. Defendants spend much of their brief in chief discussing MERS and its role as nominee under the mortgage. They

7

ultimately argue that BAC failed to prove the validity of the assignment of the mortgage by MERS to BAC. Defendants also challenge the authority of MERS's vice president, Mohit Pathan, to sign the assignment. Specifically, Defendants claim that Pathan is a "false officer of MERS" because he actually worked for Bank of America (BOA) rather than MERS and because "[h]is signature is believed to be a *robo* signature." Defendants' only support for the claim that Pathan worked for BOA and not for MERS is their unsubstantiated claim that Pathan's resume is published on two internet websites.

{12}     We are not persuaded. With regard to MERS, we note that MERS's mortgagee status is narrowly circumscribed: it acts solely as "nominee" for the owner or servicer of the mortgage, including the owner's or servicer's successors and assigns. In this case, the mortgage stated that MERS was the nominee for First State and its successors, and it was the mortgagee. It further provided that MERS, as nominee for First State and its successors, "holds only legal title to the interests granted by [Duran] . . . , but, if necessary to comply with law or custom," it also had the right "to exercise any or all of those interests, including, but not limited to, the right to foreclose . . . and to take any action required of [First State.]" These provisions, to which Duran expressly agreed when she signed the mortgage contract, gave MERS the right to assign the mortgage to BAC on behalf of First State.

8

{13} In addition, Defendants' suggestion that Pathan's employment record—as allegedly published on two internet websites—somehow undermines the legitimacy of his status as a certifying officer for MERS is not sufficient to defeat summary judgment in this case. We first observe that Defendants did not raise the issue of the validity of Pathan's signature in response to the motion for summary judgment below. We are not required to consider arguments not made to the district court in this procedural posture. *See Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852. For the sake of completeness, and in an effort to dispose of this issue, we exercise our discretion to review the claim and determine that it has no merit. On appeal, Defendants make only bare allegations concerning Pathan and have not offered anything of evidentiary value suggesting Pathan was not the vice president for MERS or that he acted improperly when he executed the mortgage assignment on behalf of MERS. Consequently, Pathan on behalf of MERS had the authority to assign the mortgage on behalf of First State, and MERS validly held the mortgage on Defendants' property at the time of the assignment to BAC.

**Holder in Due Course**

{14} We understand Defendants' argument to be that the note is not a negotiable instrument and that BAC is not the holder in due course of the note. We begin with whether the note is a negotiable instrument. Defendants correctly cite to NMSA 1978, Section 55-3-104 (1992), for the definition of a negotiable instrument but appear to

9

argue that the note here does not meet the definition because it was transferred to another party and is therefore "further evidence of false deceptive claims of [BAC]." We are not persuaded.

{15} In our view, there can be no dispute that the note signed by Duran is a negotiable instrument pursuant to Section 55-3-104. Here, the note as drafted was payable to the order of First State and stated that Duran understood that First State could transfer the note. Moreover, the note contained two endorsements: one to the order of First State and one from First State without a specific payee identified. This second endorsement meant that the note was payable to the note's bearer. *See* NMSA 1978, § 55-3-109(a)(2) (1992) (stating than an order is payable to bearer if it "does not state a payee"). Because BAC properly had possession of the note, it was the holder of the note. *See* NMSA 1978, § 55-1-201(b)(21)(A) (2005) (defining "holder" as "the person in possession of a negotiable instrument that is payable . . . to bearer"). Accordingly, BAC was entitled to enforce the note. NMSA 1978, § 55-3-301 (1992) ("'Person entitled to enforce' an instrument means . . . the holder of the instrument[.]").

{16} We conclude that BAC's status as the note's holder meant that BAC could, in the event of any default, pursue Duran for any amounts owing on the note. To the extent that Defendants argue that the assignment of the mortgage was flawed, the assignment had no effect on BAC's ability to enforce the note because the note is

10

separate from the mortgage. The mortgage serves only as security for payment of the note and, therefore, even absent the mortgage, BAC could still pursue Duran for payment of the note. Accordingly, the note is a negotiable instrument that BAC had the right to enforce.

{17} Defendants also argue that BAC is not the holder in due course. In order to establish that it is a holder in due course, BAC must show that it took the note "(i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored," and without notice of other circumstances that are not applicable here. NMSA 1978, § 55-3-302(a)(2) (1992). Defendants do not dispute any of the above elements but premise their argument solely on the basis that the note is not a negotiable instrument and, therefore, BAC is not the holder in due course. However, we have already concluded that the note at issue in this case is a negotiable instrument, and that the note and mortgage were successfully transferred to BAC through both assignment and a blank endorsement on the note. Therefore, there are no disputed issues of fact concerning BAC's status as a holder in due course, and summary judgment was properly granted.

**Jurisdiction**

{18} Defendants finally argue that "[w]ithout the production of the [p]romissory [n]ote [BAC has] no case." To the extent Defendants are arguing that the district court should have dismissed this case due to lack of jurisdiction because BAC did not

11

produce the original note, we disagree. Defendants misrepresent the facts. Our review of the record indicates that BAC produced the original note to the district court and to Defendants. Indeed, the district court in its opinion specifically stated that BAC had produced the original note. Further, Defendants do not dispute BAC's assertions that it produced the original note in their reply brief. In any event, Defendants have cited to no law requiring that the original note be filed with the district court. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

{19}    Here, BAC attached copies of the note and mortgage to its complaint for foreclosure. Defendants have not come forward with any issues of material fact suggesting that the note and mortgage are not accurate and signed by Duran, that the terms of the loan were changed in any way, or that Duran's agreement was modified. In summary, there are no disputed issues of fact concerning the note and mortgage or that Defendants owe the debt represented by the note. BAC produced prima facie evidence of that status, and Defendants did not produce any evidence creating a dispute. *See Schwartzman*, 99 N.M. at 441, 659 P.2d at 893 (stating that "[a] party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact once a prima facie showing is made by the movant"). Defendants have failed to

present any evidence that would create a genuine issue of material fact regarding their jurisdiction claims, which would bar entry of summary judgment in this case.

**CONCLUSION**

{20}    We affirm the district court's judgment.

{21}    **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**


**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**JONATHAN B. SUTIN, Judge**